[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. The parties were married on October 23, 1969 in Elizabeth City, North Carolina. They have both been residents of Connecticut all of their lives. CT Page 11720 The defendant was 17 years of age when married and the plaintiff 19. They eloped to North Carolina while she was in her junior year in high school and pregnant with their first child. The plaintiff had quit school in his junior year. Neither has received an equivalency certificate. At the time of their marriage the plaintiff was working in an auto body shop, having just been terminated at Santos Fuel, his father's oil business, where he had been a truck driver. After their marriage, he attended school to learn oil business mechanics and then became a serviceman for Santos Fuel until its sale in 1984. In December, 1986, the plaintiff went into business for himself after working for Superior Fuel in the interim period.
The parties have had three children issue of their marriage: Lynn Marie Santos who is 24 years of age, Laureen Santos Philomeno, age 22, who is married and has the parties' first grandchild and Joseph who is presently living with his mother and is 19 years of age. The plaintiff is 44 years of age, is in good health, although a cyst on his spleen has recently been diagnosed and this is being followed. The defendant is 42 years of age and in good health.
The parties separated in June, 1992, although the action was commenced on March 2, 1992. At the time the parties separated the defendant was operating a day care business out of the marital home and the plaintiff was operating his own oil burner repair business. The defendant continues to operate her day care business at her parents' home in Bridgeport, does housecleaning of one family's home on Tuesday mornings each week and works as a restaurant waitress. In her financial affidavit she reports gross income from her day care business of $820 per week with expenses for rent, supplies, snacks, staff wages and utility expenses totaling $381 for an adjusted gross profit of $438.72 and a net after self-employment tax of $339. With her housecleaning and waitressing job, she has total net income of $464 per week.
The defendant lives with her older daughter and her son in a condominium owned by her parents in Monroe. Her weekly expenses include numerous expenses for the condominium which, in effect, are paid by her parents. If she were able, she would wish to reimburse her parents for the expenses for housing which include rent or mortgage of $320, real estate taxes of $48.87, condominium tax of $25.08, common charges of $19.54 and home equity loan payments (taken out by her parents to purchase the condominium) for a total weekly payment of $528.87 or $2,274 per month. Her CT Page 11721 figure for food includes food for Joseph and food for Lynn, both of whom are working. Her expenses also include $62.05 for son Joseph's car loan which he, in fact, is paying.
The plaintiff is self-employed as a heating and air conditioning installer and repairer. He started his own business in December, 1986, his father providing him with a service van. During the years 1987, 1988 and 1990, he averaged $35,000 net income for the year before taxes and self-employment tax. The year 1991 was a net loss of $3400 due in large measure to his lack of time spent on the job. His financial affidavit reflects net weekly income of $325 before any tax implications ($208.91 and $126.31 self-employment taxes). The loan repayment of $163 per week is to plaintiff's father and was not a business deduction for comparative purposes with 1987-1990. Net income from the business prior to tax implications would be in the area of $25,000 per year. It was the defendant's claim that the plaintiff spent numerous afternoons on his boat and that he was drinking excessively and, therefore, not attending to his business as he had in 1987, 1988 and 1990. While the plaintiff testified that his business suffered because of the downturn in the economy in 1988 and 1989, he also testified that Sears represented about $30,000 of his gross business and that it moved in 1989 so that he lost that business. However, his earnings for 1990 were but $4,000 less than 1988 which was his best year.
The court finds that the plaintiff has an earning capacity greater than he is presently producing and that his earning capacity is at least $350 per week net after taxes and self-employment taxes.
The plaintiff has always had money for those things he desired. The end of 1989 he bought himself a 1989 Regal 18 foot Bow Rider boat. He owns a 1987 Ford Box truck (used in his business), a 1979 Dodge Omni and a 1981 Honda motorcycle. In 1986, 1987, 1988 and 1989 the plaintiff and his son had three horses and participated in rodeo riding. The expenses for the horses were mostly paid out of the business.
This action was commenced in March, 1992. It is the defendant's claim that the marriage broke down because of the plaintiff's excessive drinking and his failure to work in his business. It is the plaintiff's claim that the marriage broke down because of the defendant's infidelity. CT Page 11722
The only evidence on this latter issue was the plaintiff's testimony that he saw the defendant go inside the motor home with a man in 1988 and in 1989 she was dancing with another man. The evidence falls far short of sufficient evidence for the court to find any infidelity on the defendant's part.
Both parties have testified that the marriage is broken down. The defendant does agree that the breakdown is, perhaps, 30 percent her fault and 70 percent the fault of the plaintiff. The court does find that the marriage has broken down irretrievably and that the cause for the breakdown is more the plaintiff's than the defendant's.
At the time of her birth, the defendant became the owner of a certain piece of real property on Madison Avenue in Bridgeport. She owned this property at the time of the marriage. The plaintiff and the defendant caused a foundation to be built upon that property and a house to be moved and placed on that foundation. The defendant's parents paid for the house moving. The plaintiff and the defendant then obtained an $8,000 mortgage to pay for improvements to this house and lived in this house for approximately five years.
In the beginning of 1976, the plaintiff's parents, Joseph F. Santos, Sr. and Carmella Santos, offered to sell property that they owned at 4357 Madison Avenue in Trumbull to the plaintiff and the defendant for $28,000. This offer was rejected by the parties because the funds they anticipated receiving from the sale of their Bridgeport property would not be sufficient to allow them to purchase the property in Trumbull and make the improvements they desired. After the offer was rejected, Mr. and Mrs. Santos, Sr. offered to transfer the property at 4357 Madison Avenue to the parties on the condition that they refurbish the property and make such improvements that they desired to make and pay all their bills without the need to obtain any financing.
In reliance upon this promise, the parties sold their property on Madison Avenue in Bridgeport, refurbished the property owned by Mr. and Mrs. Santos, Sr. at 4357 Madison Avenue in, Trumbull and paid approximately $41,000 for improving and refurbishing the Trumbull property and moved into that property in December, 1976. The plaintiff has testified that the amount invested in this property by the parties was closer to $25,000. The Santos, Sr.'s never conveyed this property to the parties. As a result, the defendant has brought a civil action against the CT Page 11723 Santos, Sr.'s claiming fraud, unjust enrichment and quantum meruit in a companion action which has been joined with this action.
There are certain liabilities which accumulated during the course of the parties' marriage. Said liabilities are as follows:
CREDITOR OWNERSHIP BALANCE DUE
Discover card Joint $1,302.10
Chase Visa Plaintiff 1,168.84
First Card Joint 1,135.55
Stamford Teachers Credit Defendant's exclusive Union — line of credit use 4,500.00
Chevy Chase 4,005.44
In addition, the plaintiff has a $15,593 debt to his father for loans. The balances due for credit card purchases he claims were made by the defendant, who forged his name to four credit card applications. The plaintiff also claims having no knowledge of the four credit cards until shortly before the couple separated in June, 1992, when the defendant handed him an envelope containing them.
Regardless of in whose name each of the liabilities are, the parties accumulated these liabilities during their marriage for their benefit and the benefit of their children. The court has divided these liabilities having considered the factors of § 46b-81
of the General Statutes.
The defendant is the owner of a one-third interest in a condominium in Florida known as Unit C5, Sharondale Condominiums of Palm River, Collier County, Florida. This condominium was purchased by the defendant's parents from their funds although they placed a one-third interest in that property in the defendant's name.
Both parties have jewelry which they have not noted in their financial affidavits. In the plaintiff's case this jewelry amounts to about $2,000. In the defendant's case this jewelry amounts to about $8,000.
In addition to the foregoing, the court finds that there is CT Page 11724 the requisite jurisdiction and that the allegations of the cross-complaint have been proved and are true. (The plaintiff has alleged identical allegations in his complaint.)
The court has considered all of the criteria of § 46b-81 and § 46b-82 of the General Statutes together with all of the evidence and the case law. Counsel for the defendant has claimed counsel fees and in that connection the court has considered the provisions of § 46b-62 of the General Statutes. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982).
The court on October 3, 1994 entered a decree of dissolution of the parties' marriage and now enters the following orders on the defendant's cross-complaint:
1. The plaintiff shall pay to the defendant during the lifetime of the plaintiff and until the death or remarriage of the defendant, the weekly sum of $100 as periodic alimony.
2. The defendant shall retain her interest in the condominium in Florida known as Unit C5, Sharondale Condominiums of Palm River, Collier County, Florida.
3. The defendant shall assign and transfer all of her right, title and interest in and to the 1987 Ford Cobra Recreational vehicle to the plaintiff and he shall be wholly responsible for and indemnify and hold harmless the defendant from any liability with respect to the loan upon said vehicle.
4. The defendant shall retain as hers the 1985 Porsche and the 1992 Ford Explorer, free of any claim or demand by the plaintiff. She shall indemnify and hold harmless the plaintiff from any claim or demand upon the outstanding loan on the 1992 Ford Explorer.
5. The plaintiff shall retain as his the 1981 Chevrolet Van, the 1979 Dodge Omni, the 1987 Ford Box Truck and the 1981 Honda Shadow motorcycle, free of any claim or demand by the defendant. The plaintiff shall also retain as his the 1989 CT Page 11725 Regal 18' Bow Rider boat and he shall be wholly responsible for the outstanding loan on that boat and shall indemnify and hold harmless the defendant from any claim or demand thereon.
6. Each party shall be entitled to retain such jewelry as is in the possession of each, free of any claim or demand by the other party.
7. Each party shall be entitled to retain such tangible personal property as is in his or her possession, free of any claim or demand by the other party.
8. Except as set forth above, each of the parties shall retain the assets set forth in her or his respective financial affidavit, free of any claim by the other.
10. The plaintiff shall be responsible for the Chevy Chase indebtedness, the Chase Visa indebtedness and the First Card indebtedness and shall indemnify and hold harmless the defendant from any claim or demand on that indebtedness. The defendant shall be responsible for the Discover card indebtedness and the Stamford Teachers Credit Union line of credit and shall indemnify and hold harmless the plaintiff from any claim or demand on that indebtedness.
11. Except as set forth in paragraph 10, each party shall be responsible for the liabilities shown on her or his respective financial affidavit and shall indemnify and hold harmless the other party with respect to the same.
12. In the event of a claim of deficiency in any of the parties' joint income tax returns, state or federal, the party whose under reporting of income or other act of commission or omission results in a successful challenge, will be deemed ultimately responsible-for any payment of tax, interest or penalty and shall indemnify and hold harmless the other party from any liability therefrom.
 Any future refund shall belong to the party whose reporting of income, expenses and deductions resulted in said refund. In the event it is impossible or overly burdensome to prove which party is entitled to the refund, the parties shall share the refund equally.
13. Each party shall pay her or his own attorney's fees. CT Page 11726
In view of judgment having been entered on defendant's cross-complaint, defendant's counsel shall prepare the judgment file.
Judgment shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE